1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    SAVON D. DENNIS,

11              Plaintiff,                    No. CIV S-05-0102 FCD EFB P

12        vs.

13    C. HUSKEY, et al.,

14              Defendants.          FINDINGS AND RECOMMENDATIONS

15    _____/

16          Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42

17    U.S.C. § 1983.  This action proceeds on the January 18, 2005, complaint in which plaintiff

18    claims that defendant C. Huskey used excessive force against him in violation of the Eighth

19    Amendment.  In particular, he alleges that on May 26, 2004, when plaintiff reached through the

20    slot in his door to take his sack lunch from the tray, defendant C. Huskey slammed the tray slot

21    door onto plaintiff's fingers, injuring plaintiff, and that thereafter C. Huskey denied plaintiff's

22    request to have medical staff examine his fingers.  The matter is currently before the court on

23    defendant C. Huskey's motion for summary judgment.  For the reasons explained below, there

24    are genuine disputes over material issues of fact and the motion must be denied.

25    ////

26    ////

1

I.   **Facts**

At all times relevant to this action, plaintiff was a prisoner confined to High Desert State Prison ("HDSP").  *See* Compl., at 1-2.  Defendant C. Huskey (hereafter "Huskey") was a guard at that prison.  Def.'s Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof, Ex. 1, Decl. of C. Huskey ("Huskey Decl."), at ¶¶ 1, 2.

On May 2, 2004, plaintiff was housed in the Administrative Segregation Unit ("ASU"), where Huskey worked as a "floor officer."  Huskey Decl., at ¶ 2.  The cells in the ASU consist of three solid walls and a door in which there is a window and a food port, i.e., a slot with a hinged front panel which locks from outside.  *Id*., at ¶ 3.  At mealtime, a floor officer unlocks the front panel of the food port so that the prisoner can reach through to take their meal and to dispose of trash from the previous meal.  *Id*., at ¶ 2.  Only guards can close and lock the food ports. Prisoners cannot gain access to the panel from inside the cell.  *Id*., at ¶ 6.

On May 26, 2004, Huskey was collecting breakfast trays and trash from ASU cells and distributing sack lunches.  Compl., at 2.  In his verified complaint, plaintiff asserts that when Huskey approached plaintiff's cell, he questioned plaintiff about a rules violation report, particularly whether it was about plaintiff having assaulted another guard.  *Id*.  Plaintiff said he did not know what defendant was talking about.  *Id*.  Plaintiff claims that when Huskey delivered a tray to plaintiff and plaintiff handed his trash through the slot, Huskey grabbed the lunch, threw it onto the floor and ordered plaintiff to get naked saying he wanted to see the size of plaintiff's genitalia.  *Id*.  Plaintiff said he would not do "sexual favors" in return for a lunch that defendant dumped on the floor.  *Id*.  Plaintiff further alleges that defendant said plaintiff was lucky to get any lunch since plaintiff had assaulted a correctional officer.  *Id.*, at 3.  Huskey then allegedly tossed the lunch onto the tray slot and waited for plaintiff to reach out for it.  *Id*.  Plaintiff claims that when his hand was outside the slot and exposed Huskey then slammed the hinged door onto plaintiff's left hand, injuring plaintiff.  *Id*.  Plaintiff says that when he asked Huskey to obtain medical attention for plaintiff, Huskey refused.  Id.

1   Plaintiff alleges that defendant fractured his fingers, and he never received medical

2   attention for this injury.

3   For purposes of summary judgment, defendant's motion assumes as true plaintiff's

4   version of events concerning the alleged May 26, 2004 incident.  Def.'s Mot. for Summ. J., Stmt.

5   of Undisp. Facts in Supp. Thereof ("DSUF") at 2, n. 2.

6   Defendant Huskey has submitted evidence that medical staff examined plaintiff's fingers

7   on May 28, 2004.  DSUF, Ex. 2.  Plaintiff reported that his fingers had been closed in the food

8   port, and he could not move them.  *Id.*  On examination, a nurse found that plaintiff's first and

9   third fingers were "slightly swollen on last distal knuckle," and that he had "impaired mobility."[1]

10  *Id.*  The nurse scheduled plaintiff for a follow-up examination on June 8, 2004.  *Id.*  On June 8,

11  2004, a physician examined plaintiff, who requested x-rays of his fingers.  DSUF, Ex. 3. The

12  physician found "fusiform swelling at the first and second IP joints of the second and third

13  fingers."  *Id.*  There was no deformity and tenderness was minimal.  *Id.*

14  **II.    Standards on Summary Judgment**

15  Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases

16  with no disputed material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of*

17  *Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a

18  sufficient disagreement to require submission to a jury or whether it is so one-sided that one

19  party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

20  (1986).

21  Rule 56 serves to screen the latter cases from those which actually require resolution of genuine

22  disputes over facts material to the outcome of the case; e.g., issues that can only be determined

23  through presentation of testimony and evidence at trial such as credibility determinations of

24  conflicting testimony over dispositive facts.

25

26  [1] Defendant has not defined any medical term used in the records or in the motion.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[2] Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the

---

[2] On June 21, 2005, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[3]  The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631.  There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial.  *Celotex*, 477 U.S. at 323.  The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts.  *See Anderson*, 477 U.S. at 248.[4]  Conclusory statements cannot defeat a properly supported summary judgment motion.  *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S. at 249, 255.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v.*

---

[3]  The nonmoving party with the burden of proof  "must establish each element of his claim with significant probative evidence tending to support the complaint."  *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment.  *Celotex*, 477 U.S. at 322.

[4]  A verified complaint may be used as an affidavit in opposition to the motion.  *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

1  *American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*,

2  477 U.S. at 322).

3        If reasonable minds could differ on material facts at issue, summary judgment is

4  inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other

5  hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the

6  nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation

7  omitted).  In that case, the court must grant summary judgment.

8        With these standards in mind, it is important to note that plaintiff bears the burden of

9  proof at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate

10  indifference to the plaintiff's safety.  Equally critical is that "deliberate indifference" is an

11  essential element of plaintiff's cause of action.  Therefore, to withstand defendant's motion,

12  plaintiff may not rest on the mere allegations or denials of his pleadings.  He must demonstrate a

13  genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he

14  must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the

15  evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

16  **III.   Analysis**

17        "As to materiality, the substantive law will identify which facts are material.  Only

18  disputes over facts that might affect the outcome of the suit under the governing law will properly

19  preclude the entry of summary judgment."  *Id.* at 248.  Here, plaintiff's action arises under 42

20  U.S.C. § 1983 and the Eighth Amendment.  To prevail at trial, he must prove that the defendant

21  deprived him of his Eighth Amendment rights while acting under color of state law.  To prove

22  that Huskey used force that violated the Eighth Amendment, he must prove by a preponderance of

23  the evidence that Huskey used force maliciously and sadistically solely for the purpose of causing

24  plaintiff physical harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).   In order to show that

25  Huskey denied him medical care in violation of the Eighth Amendment, plaintiff must show by a

26  preponderance of competent evidence that the defendant knew plaintiff had a serious injury and

1   was deliberately indifferent to it.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   As discussed

2   below, plaintiff has demonstrated a genuine dispute about whether defendant used excessive

3   force.  He has not, however, established a genuine issue for trial over whether Huskey was

4   deliberately indifferent to his serious medical needs.

5      **A.  Excessive Force**

6      Plaintiff claims that Huskey used excessive force by slamming a food port door onto his

7   hand.  Huskey asserts that although plaintiff's version of the facts is taken as true for purposes of

8   this motion, he nonetheless cannot submit sufficient evidence of excessive force to overcome

9   summary judgment.  In particular, Huskey relies on *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

10   for the proposition that "only extreme deprivations rise to the level of an Eighth Amendment

11   violation."[5]  Def.'s Mot. for Summ. J., at 4.  Huskey argues that since plaintiff's injury was "*de

12   minimis*," Huskey is entitled to judgment as a matter of law.  While the point is taken, as far as it

13   goes, the argument appears to neglect a fundamental aspect of the Eighth Amendment.  The

14   question presented in *Hudson* was "whether the use of excessive physical force against a prisoner

15   may constitute cruel and unusual punishment when the inmate does not suffer serious injury."

16   *Id.*, at 4.  The answer, plainly, was, yes.  The Court examined the various contexts in which the

17   cruel and unusual punishments clause applies and the different standards applicable thereto.  *Id.*,

18   at 7-12.

19      The law is well-established that harsh conditions of confinement, including the use of

20   force, will not violate the Eighth Amendment if the conditions are "part of the penalty that

21   criminal offenders pay for their offenses against society."  *Whitley v. Albers*, 475 U.S. 312, 319

22   (1986); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  It is also well accepted that not every

23   "malevolent touch by a prison guard" violates the Eighth Amendment.  *Hudson v. McMillian*, 503

24   U.S. 1, 9 (1992).  Therefore, "*de minimis* uses of physical force" are not unconstitutional unless it

25

26      [5]  The entire sentence reads, "For instance, extreme deprivations are required to make out
a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 8-9.

1   of a sort that is "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327.  However,

2   what violates the Eighth Amendment is "the unnecessary and wanton infliction of pain," i.e.,

3   infliction of suffering that is "totally without penological justification." *Rhodes*, 452 U.S. at 346.

4       Whether an Eighth Amendment violation has occurred depends upon the mental state of

5   the defendant together with objective indicia surrounding the condition or suffering showing its

6   relationship to the purpose of imprisonment. *Id.*  The touchstone for any Eighth Amendment

7   analysis, however, is whether the condition can be said to run afoul of "contemporary standards

8   of decency. " *Rhodes*, 452 U.S. at 347.  When force is used against a prisoner, the question of

9   "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns

10  on whether force was applied in a good faith effort to maintain or restore discipline or maliciously

11  and sadistically for the very purpose of causing harm." *Whitley*, 475 at 320-21; *see also Hudson*,

12  503 U.S. at 9.  Plaintiff's version of the events is an incident clearly manifesting the latter.

13  "When prison officials maliciously and sadistically use force to cause harm, contemporary

14  standards of decency always are violated," regardless of whether the resulting injury is

15  significant. *Hudson*, at 9.  In other words, "the use of excessive physical force against a prisoner

16  may constitute cruel and unusual punishment when the inmate *does not suffer serious injury*."

17  *Hudson*, 503 U.S. at 4 (emphasis added).  "Otherwise, the Eighth Amendment would permit any

18  physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

19  quantity of injury." *Id.*

20      *Hudson* teaches that the extent of injury suffered is just "one factor that may suggest

21  whether the use of force could plausibly have been thought necessary in a given situation, or

22  instead evinced such wantonness with respect to the unjustified infliction of harm as is

23  tantamount to a knowing willingness that it occur." *Id.*, at 7.  When determining whether the

24  force used was excessive, the court must consider (1) the need to use force, (2) the relationship

25  between that need and the amount of force used, (3) the threat reasonably perceived by prison

26  officials, (4) any effort made to temper the forceful response, and (5) the extent of the injury

1    suffered by the inmate.  *Id.* at 7.

2         Here, the facts assumed for purposes of this motion are that Huskey waited until plaintiff

3    reached through the food port and then slammed the door on plaintiff's fingers.  The factual

4    context establishes Huskey's motive as punitive; i.e. to retaliate for plaintiff's prior conduct

5    involving another guard.  The facts defendant's motion assumes also include plaintiff's detailed

6    allegations in the verified complaint describing how the simple delivery of lunch escalated into

7    the slamming of a food port on plaintiff's fingers.  Thus, the undisputed facts for this motion are

8    that Huskey approached plaintiff's cell while collecting trash from breakfast and distributing sack

9    lunches.  He questioned plaintiff about whether plaintiff was subject to a recent rules violation

10   report for having assaulted a guard.  Plaintiff denied knowledge of the report and assault.

11   Thereafter, Huskey said plaintiff was lucky to get lunch at all since he assaulted a guard.  He

12   threw plaintiff's lunch on the ground, and demanded to see plaintiff's genitalia. When plaintiff

13   refused, Huskey placed a sack lunch on the food port, waited until plaintiff reached for it and

14   slammed the food port door onto plaintiff's hand.  Regardless of the severity or permanence of the

15   resulting injury, that act was not a limited application of force in a good faith effort to maintain or

16   restore discipline.  Rather, it was done maliciously and sadistically for the very purpose of

17   causing harm and inflicting pain.  *Whitley*, 475 at 320-21; *see also Hudson*, 503 U.S. at 9.

18        Huskey submits no evidence that plaintiff was causing any disturbance when he reached

19   through the food port for his lunch.  There is no record presented to show that the food port had to

20   be slammed on plaintiff's hand as a reasonably necessary measure to prevent an assault or to

21   restore order.  Neither is there any evidence of any other reason to slam the food port other than

22   for the infliction of pain.  Nothing in the record suggests that the incident was an accident.  There

23   is no evidence that Huskey attempted to temper the force he used.  And, for purposes of summary

24   judgment, it is undisputed that plaintiff suffered some injury.  As made clear in *Hudson*, whether

25   the injury could be described as "*de minimis*," is irrelevant in the context of these facts.  *See*

26   *Keller v. Oliver*, 289 F.3d 623, 628 (9th Cir. 2002) (iterating that in *Hudson*, the measure of *de*

1  *minimis* applied to "the amount of *force* used, not the nature or severity of the *injury* inflicted.")

2  (emphasis in original).

3        The court finds that the undisputed facts show that Huskey was angry with plaintiff

4  because he believed that plaintiff had assaulted another guard.  On the evidence before the court,

5  a reasonable jury could conclude that Huskey slammed the food port door on plaintiff's hand

6  sadistically and maliciously for the very purpose of causing pain.  Thus, regardless of whether

7  plaintiff suffered serious or significant injury beyond the pain, a jury could return a verdict in

8  plaintiff's favor.  Therefore, defendant Huskey is not entitled to judgment as a matter of law on

9  this claim.

10       **B.  Medical Care**

11       Plaintiff also claims that he requested Huskey to obtain medical attention for plaintiff's

12  injured fingers, and that Huskey refused.  As discussed below, plaintiff has not demonstrated the

13  existence of a triable issue on this claim.

14       In the context of medical treatment, or failure to treat, prison officials violate the Eighth

15  Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate

16  indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A prison

17  official is deliberately indifferent when he or she knows of and disregards a risk of injury or harm

18  that "is not one that today's society chooses to tolerate."  *See Helling v. McKinney*, 509 U.S. 25,

19  35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official must "be aware of the

20  facts from which the inference could be drawn that a substantial risk of serious harm exists, and

21  he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Deliberate indifference "may be

22  manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere

23  with medical treatment, or it may be shown by the way in which prison physicians provide

24  medical care."  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  A medical

25  condition that significantly affects an individual's daily activities, an injury or condition a

26  reasonable doctor or patient would find worthy of comment or treatment, and chronic and

1   substantial pain constitute serious medical needs.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050,

2   1059-60 (9th Cir. 1992).

3          Significantly here, to prevail on a claim that a delay in treatment violated the Eighth

4   Amendment, plaintiff must prove that the delay was harmful.  *See McGuckin v. Smith*, 974 F.2d

5   1050, 1060 (9th Cir. 1992); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

6   (9th Cir. 1985) (per curiam) (holding that claim of deliberate medical indifference does not exist

7   unless delay caused harm).  There is no dispute that there was a delay in treatment.[6]  However,

8   plaintiff's evidence does not show that the two-day delay resulted in further injury or significant,

9   prolonged pain beyond the initial act which would have been occasioned by the delay in

10  treatment.  The physician's report of the June 8, 2004, examination notes that plaintiff was in

11  minimal pain.  Plaintiff does not submit any evidence to the contrary.  On the evidence before the

12  court, a reasonable fact finder could conclude that the delay in treatment was harmful and, itself, a

13  violation of the Eight Amendment.  *See, e.g., McGuckin*, 974 F.2d at 1060.

14         Accordingly, it is hereby RECOMMENDED that:

15         1.  Defendant's April 10, 2007, motion for summary judgment be granted in part and

16  denied in part as follows:

17                a.  That defendant Huskey be granted summary judgment on plaintiff's claim that

18  he was deliberately indifferent to plaintiff's serious medical needs; and

19                b.  That defendant Huskey be denied summary judgment on the claim that he used

20  excessive force against plaintiff; and

21  ////

22  ////

23  _____

24         [6]  The injury occurred on May 26.  Plaintiff first obtained medical attention on May 28.
    Moreover, defendant admits for purpose of the motion that he refused to obtain medical attention

25  for plaintiff at the time of the incident.  The registered nurse who examined plaintiff on May 28
    noted that plaintiff's fingers were swollen and his mobility was impaired, and scheduled plaintiff

26  for a follow-up examination with a physician.  The record shows that plaintiff's injury was
    worthy of comment and further examination.

1    2.  That plaintiff be given 30 days to file and serve a pretrial statement and defendant be

2  given 15 days from the date plaintiff serves his pretrial statement to file his own pretrial

3  statement.

4       These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

6  after being served with these findings and recommendations, any party may file written objections

7  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

8  to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

9  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

10  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11  Dated:  February 13, 2008.

12

13                    EDMUND F. BRENNAN
                      UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26